JOAQUIN INDEPENDENT SCHOOL DIS-
TRICT, Appellant,

v.

John FINCHER et al., Appellees.

No. 754.

Court of Civil Appeals of Texas,
Tyler.

April 4, 1974.

Rehearing Denied May 9, 1974.

Bankhead & Davis, Tom Bankhead, Carthage, for appellant.

Ramsey, Ramsey & Smith, John W. Mitchell, San Augustine, for appellees.

DUNAGAN, Chief Justice.

This case is one of first impression in Texas.

Involved is the validity of a school consolidation between the Joaquin Independent School District and the Strong Common School District. The appellees, John Fincher and eight other residents of the Strong Common School District instituted suit against the appellant, Joaquin Independent School District, in the 123rd District Court of Shelby County. The suit contested a consolidation election and order declaring consolidation of the Joaquin District and the Strong Common School District. Upon a trial, without a jury, the appellees contended that the two school districts were not districts which could be consolidated under the Texas Education Code. The trial court found for the appellees declaring the consolidation null and void and granted an injunction against the appellant prohibiting it from the levy or collection of taxes on any property located in the Strong Common School District. The appellant has duly perfected its appeal to this court.

The appellant, Joaquin Independent School District, is a county line independent school district located in Panola and Shelby Counties. The Strong Common School District is a common school district in Shelby County. The field note descriptions of the two districts show that portions of the northern and southern boundaries of the Strong Common and Joaquin Independent School Districts respectively are the channel of the Tenaha Creek. (Tenaha Creek was a small creek which drained from the west to the east and into the Sabine River.)

These field note descriptions still represent the northern and southern boundaries of the two districts, although today the section of the Tenaha Creek mentioned in the field notes is no longer visible. When the Toledo Bend Reservoir was created by the damming of the Sabine River, the Ten-aha Creek became inundated by the back waters of the Sabine River. By inspecting the map of the complete area which was introduced into evidence at the trial (as shown on Figure I below), it is possible to locate the previous boundaries of the Tena-ha Creek.

FIGURE 1

LEGEND

1—JOAQUIN I.S.D.
2—SHELBYVILLE I.S.D.
3—STRONG C.S.D.

SHADED AREA—RESERVOIR BOUNDARY

[A9968]

The meanderings of the Tenaha Creek forming parts of the northern and southern boundaries of the Strong Common and Joaquin Independent School Districts are noted by this court placing on the màp (Figure I) an A mark and B mark. The black line which traverses the two marks represents Tenaha Creek prior to the inundation. The shaded area on the map was added at the insistence of the trial judge and shows the present location of the waters of the Toledo Bend Reservoir. The map's legend also indicates the position of the Joaquin Independent, Strong Common, and Shelbyville Independent School Districts.

At the present time the Strong Common District is completely surrounded by land of the Shelbyville Independent School District. (There is one exception and that piece of property is noted by an X mark on the map.) It was stipulated at the trial that State Highway 139 does cross the waters of the reservoir by bridge but that bridge connects the Joaquin District with the Shelbyville District. There is presently no bridge or land connection between the Joaquin District and the Strong District.

The evidence at the trial revealed that the Sabine River Authority, an independent state agency established by the Texas Legislature, now owns the surface of the flooded property under the Toledo Bend Lake. The mineral ownership of the property, however, for the most part was not affected by the Authority's condemnation and purchase of the surface. It was also shown at the trial that the utility and pipeline easements, now covered by water, were not affected by the Authority's acquisitions. The Sabine River Authority is a tax-exempt agency but the mineral interest and pipeline easements underlying the Toledo Bend Lake are subject to taxation by the taxing authorities.

There is in actuality only one question in this appeal. It is simply stated—are the Joaquin and Strong School Districts capable of consolidation under Section 19.231, Texas Education Code, V.T.C.A.? Since no allegation of election irregularities is made by either the appellant or appellees and because this appeal is wrapped only in the robe of statutory interpretation and construction, if this court finds that the two districts are capable of consolidation under the statute, then we must reverse the trial court's judgment.

Vernon's Texas Codes Annotated, Education Code, Sec. 19.231, sets out which school district and under what circumstances those various districts may be consolidated. Section 19.231 reads as follows:

"§ 19.231. Districts Which May Consolidate

"(a) Subject to the limitation of Subchapter K of this chapter, any of the following groups of school districts may, by the procedure described in this subchapter, consolidate into a single school district:

(1) two or more contiguous common or county-line common school districts;

(2) two or more contiguous independent or county-line independent school districts;

(3) *one or more independent or county-line independent school districts and one or more common or county-line common school districts constituting as a whole one continuous territory;*

(4) a rural high school district and one or more contiguous common or county-line common school districts; or

(5) one or more rural high school districts and one or more independent or county-line independent school districts, where all of the districts constitute as a whole one continuous territory.

"(b) The combined districts may all be located wholly within a single

county, or they may be located in adjoining counties; or the combined districts may be composed of one or more districts located wholly within one or more counties and one or more county line districts." (Emphasis added.)

Subparagraph (3) covers the circumstances we have in the present fact situation. The only requirement set out by this provision is that the Joaquin Independent School District and the Strong Common School District constitute as a whole one continuous territory. If such is the case, then the two districts may be consolidated. No case has been cited nor have we found one that construes the above language. As this court reads Subparagraph (3), we feel that the language used is not clear and therefore an ambiguity is presented. When there is an ambiguity in a statute it becomes the court's duty to construe the statute and give to it the meaning that the legislature intended. Commissioners Court of Lubbock County v. Martin, 471 S.W.2d 100 (Tex.Civ.App., Amarillo, 1971, writ ref., n. r. e.); Koy v. Schneider, 110 Tex. 369, 221 S.W. 880 (1920). The cardinal rule of statutory interpretation is to ascertain the legislative intent behind the passage of the statute. Flowers v. Dempsey-Tegeler & Co., 472 S.W.2d 112 (Tex.Sup.1971); Calvert v. British-American Oil Producing Company, 397 S.W.2d 839 (Tex.Sup.1965); City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273 (Tex.Sup. 1951). In Article 10 of Vernon's Ann. Civ.St. dealing with general rules of construction for all civil statutory enactments it is stated:

\*     \*     \*     \*     \*     \*

"6. In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy.

"8. \* \* \* but the said statutes shall constitute the law of this State respecting the subjects to which they relate; and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."

Section 19.231 of the Texas Education Code passed in 1969 is unique in that it is not a reproduction of any particular statute. In all the previous education statutes there were none that set forth explicitly which school districts could consolidate. However, Section 19.231 does take certain language that was present in Article 2806, Vernon's Rev.Civ.St., and duplicates it verbatim in Section 19.231. In Article 2806, there is a distinction made between "contiguous" and "constituting as a whole one continuous territory." Such a distinction is also present in Section 19.231 of the Texas Education Code. The word "contiguous" is used in three of the five subparagraphs of Section 19.231. The language "constituting as a whole one continuous territory" exists in two of the subparagraphs. It is a fundamental rule of law that every word in a statute is presumed to have been used for a purpose. Perkins v. State, 367 S.W.2d 140 (Tex.Sup.1963); Eddins-Walcher Butane Company v. Calvert, 156 Tex. 587, 298 S.W.2d 93 (1957). We must therefore presume that the legislature had specific intent and purpose in mind when it used the phrase "constituting as a whole one continuous territory." It is of paramount importance that this court consider all of Section 19.231 and not just an isolated part to discover the true intent of the legislature. Peterson v. Calvert, 473 S.W.2d 314 (Tex.Civ.App., Austin, 1971, err. ref.); Rogers v. First National Bank of Midland, 448 S.W.2d 149 (Tex.Civ.App., El Paso, 1969, writ ref., n. r. e.); West Orange-Cove Consolidated Independent School District v. County Board of School Trustees of Orange County, 430 S.W.2d 65 (Tex.Civ.App., Beaumont, 1968, writ ref., n. r. e.).

The obvious intent of the legislature in passing Section 19.231 was to establish a standard or criteria that certain school districts could use in determining if a consolidation was authorized under law.

Those standards, as we view the matter, are ambiguous and therefore require interpretation. The language "constituting as a whole one continuous territory" has not previously been construed. But the term "contiguous" has been defined in previous cases. In Beard v. Marshall, 32 S.W.2d 496 (Tex.Civ.App., Eastland, 1930, n. w. h.), it is said that contiguous means that the various districts must so touch one another that all may be included in a common boundary line, without any intervening spaces. In the case of Miller v. School Trustees of Milam County, 52 S.W.2d 806 (Tex.Civ.App., Austin, 1932, writ ref.), it is said that school districts are contiguous in the sense that they touch each other and all are included within an unbroken boundary line. Of course, these two cases deal with the now repealed Article 2922a of Vernon's Ann.Civ.St. concerning school district annexation. Nonetheless, we think the cases are a sufficient basis by which we can determine the legislature's intent in placing the word contiguous in Article 2806. It is unreasonable if not illogical to conclude the legislature intended a different meaning to apply to the same word although used in different procedures, e. g., annexation and consolidation, when those procedures factually reach the same result. In Webster's New World Dictionary, contiguous is defined as follows: in physical contact; touching; near; adjoining. In the American Heritage Dictionary of the English Language, the following definitions of contiguous are set out: sharing an edge or boundary; touching; nearly; neighboring; adjacent. We interpret the phrase "contiguous school districts" as set forth in Section 19.231, to mean districts which are in such physical contact or proximity that no intervening space exists between their touching boundaries. The word contiguous as used in Section 19.231 does not require a substantial joinder as between the two or more districts, but only some joinder thus allowing the districts to be considered contiguous when only a small portion of the district or districts touch. The language "constituting as a whole one continuous territory" has somewhat of a different meaning. The first three words of the phrase "constituting as a whole" connotes more than just a minimal adjoinment. It implies that there must be a substantial joinder—one that includes a large portion of both school districts. 86 C.J.S. Territory § 38, pp. 647, 648 states the following concerning the term territory:

"* * * The term is defined broadly as meaning a large extent or tract of land; a region; a district; and it also means the extent or compass of land and the waters thereof within the bounds of or belonging to the jurisdiction of any sovereign, state, city, or other body; the possessions of a country.

\* \* \* \* \* \*

"The contention has been rejected that the word 'territory' refers only to the land, and does not include the waters within the prescribed boundaries, since the territory of a jurisdiction or country extends to the boundaries of the jurisdiction or country, and is not limited to the line of highwater mark along the shores of navigable rivers, or bays, or straits."

This court views territory as used in Section 19.231 as that area which is under the jurisdiction of some governmental entity. This definition would include land or water that is within the ambit of the entity's boundary. The word continuous is defined in Webster's New World Dictionary as "going on or extending without interruption or break; unbroken; connected." We view the term continuous as it is used in Section 19.231 as an extension without any interruption or hiatus. The complete phrase "constituting as a whole one continuous territory" was intended by the legislature to mean that a substantial portion of the school district's territory must be touching and thereby not separated by any spaces or gaps. If a substantial portion of the school's boundaries touch and are not divided by an interstice or gap, then a consolidation may take place. In making the

differentiation the legislative purpose was to require in situations as we have in our present case, where an independent and common school district seek to consolidate, a more substantial joinder of boundaries than is necessary when other types of school districts are consolidated. In the latter case only contiguity is the requirement. We find nothing in the new statute or in the old statutes that require or even impliedly suggest that a body of water can destroy the continuousness or contiguity of an area. If such was not our interpretation of Section 19.231 of the Texas Education Code, then any time a consolidation is attempted and the school districts involved are bordered or separated by a creek, a river, a lake, mountains, a highway, or any expanse which could arguably be said to separate the districts, then the issue of consolidation would be thrown to the courts for a judicial determination. We feel in the present situation that great weight should be given to the fact that the voters in each district determined by a majority vote that a consolidation was warranted. The fact that the districts are subsequently separated by water or other physical boundaries is not significant when the original boundaries touch one another and do not change. The view that we take in this case is in line with the liberal construction rule set forth in Article 10, supra. There is also ample precedent for our liberal construction of the consolidation statute from the case of Doherty v. King, 183 S.W.2d 1004 (Tex.Civ.App., Amarillo, 1944, err. dism.), and the case of Barber v. County Board of School Trustees, 43 S. W.2d 319 (Tex.Civ.App., San Antonio, 1931, n. w. h.). From the latter case the Amarillo Court in Doherty v. King, supra, quoted the following language:

" 'We think that the whole structure of legislation concerning the operation of our public school system would be jeopardized, and that system seriously demoralized and hampered, if the courts should attempt to strictly construe all the vague, confusing, conflicting, and constantly changing statutes upon that subject. A substantial compliance with the objects of each act, when and if ascertainable, is all that may be hoped for, and this may be accomplished only by a liberal construction of those acts to that end.' "

This court cannot agree with the appellees in their contention that the inundation of the present boundaries of the Joaquin and Strong School Districts by the Toledo Bend Lake has destroyed the continuousness of the two districts' territory. Although the Sabine River Authority now owns the lake's surface, that fact alone does not change the still existing boundaries of the two districts. The record shows that in order to travel between the Joaquin and the Strong school districts by land using the transportation now available, it is necessary to cross the corner of the Shelbyville School District. However, such condition does not prohibit the school districts here involved from being consolidated because the sole requirement of Subparagraph 3 of Section 19.231 of the Texas Education Code is that they constitute as a whole one continuous territory. If the legislature should feel that we have construed their intent incorrectly, then it is within their prerogative to change the statutory language and to give the courts a more tangible guide as to their intentions.

For the foregoing reasons this case is reversed and rendered for the appellant, Joaquin Independent School District.